UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re Application of

CHRIS TUOHY

                     Petitioner,

For an Order to Obtain Discovery Pursuant to
28 U.S.C. § 1782 for Use in a Foreign
Proceeding.
------------------------------------------------------------x

24-MC-605 (GHW) (OTW)

**<u>OPINION & ORDER</u>**

**ONA T. WANG**, **United States Magistrate Judge**:

### I. INTRODUCTION

On December 20, 2024, Petitioner Chris Tuohy, ("Petitioner") submitted an *ex parte* application (the "Application") to this Court seeking an order pursuant to 28 U.S.C. § 1782 ("Section 1782") to conduct discovery for use in a foreign civil proceeding in England (the "English Proceeding") before the High Court of Justice of England and Wales.[1] (ECF Nos. 1, 9). In the English Proceeding, Petitioner and thirty others (the "English Petitioners"), stockholders of Signifier Medical Technologies Ltd ("SMT"), allege, *inter alia*, that Akhilesh Shailendra Tripathi ("Tripathi") breached his duties as director of SMT, and seek certain equitable relief.

Petitioner here seeks to serve subpoenas upon JPMorgan Chase Bank, N.A., Morgan Stanley Wealth Management, and Citizens Bank N.A., three U.S.-based banks (together, the

---

[1] The English Proceeding bears the case name *Segulah Medical Acceleration AB and others v. Tripathi and another*, CR-2023-005099. (ECF 11 at ¶ 3). There are also two related actions pending against Tripathi involving overlapping parties and facts, and coordinated discovery. (ECF 11 at ¶ 16–19). These actions proceed before the English High Court under the case names *Segulah Medical Acceleration AB and others v. Tripathi and another*, BL-2024-000036, and *Gallahue and others v. Tripathi and another*, BL-2024-000401. (ECF 11 at ¶ 16) (*See also* ECF Nos. 11-16, 11-17, 11-18).

"Banks"), to obtain documents regarding twenty-three transactions that Petitioner believes are relevant to his claims in the English Proceeding.

Because I find that Petitioner has met the requirements to obtain discovery under Section 1782, the Application is **GRANTED**.

## II. RELEVANT BACKGROUND

### A. Factual History

Petitioner is a director and stockholder of SMT, a business that develops and commercializes non-invasive solutions for patients with sleep-disordered breathing conditions. (ECF Nos. 10 at 7, 12 at ¶¶ 1–2). Petitioner is registered as holding 4,780 ordinary shares in SMT, but, by notice dated January 17, 2024, rescinded the purchase of 1,939 shares, and now beneficially holds only 2,841 shares. (ECF Nos. 10 at 7, 12 at ¶¶ 2–3). Petitioner is also the co-director and co-owner of Speeca Limited ("Speeca"), which itself holds 6,709 shares in SMT, having also rescinded its purchase of a further 2,504 shares in SMT by notice dated January 17, 2024. (ECF Nos. 10 at 7, 12 at ¶¶ 2–3). Speeca has loaned approximately $4 million to SMT. (ECF Nos. 10 at 7, 12 at ¶¶ 2–3). Petitioner is one of thirty-one plaintiffs in the English Proceeding. (ECF 11 at ¶ 3).

Petitioner proposes to issue subpoenas to three entities: JPMorgan Chase Bank, N.A. ("JPMorgan"); Morgan Stanley Wealth Management, a division of Morgan Stanley Smith Barney LLC ("Morgan Stanley"); and Citizens Bank N.A. ("Citizens"). (ECF Nos. 10 at 5, 11 at ¶ 1). (*See* ECF Nos. 11-6, 11-7, 11-8). JPMorgan has its global headquarters at 270 Park Avenue, 10172, in New York City. (ECF Nos. 11 at ¶ 13, 11-11, 11-12). Morgan Stanley has its global headquarters at 1585 Broadway, 10019, in New York City. (ECF Nos. 11 at ¶ 14, 11-13). Citizens has over 200

branches in the New York City metropolitan area. (ECF Nos. 11 at ¶ 15, 11-14). The Banks are not parties to the English Proceeding. (ECF Nos. 10 at 6).

The Petitioners in the English Proceeding allege, *inter alia*, that Tripathi breached his duties as director of SMT, and seek equitable relief, including (1) purchase of the English Petitioners' shares in SMT at a fair value, and (2) payment by Tripathi to SMT. (ECF Nos. 11 at ¶¶ 3–4, 12 at ¶ 5). Petitioner hopes to prove that certain purported sales of medical devices from SMT to a U.S.-based buyer, Spectrum Sleep Solutions Inc. ("SSSI") and its parent company, Spectrum Medical, Inc. ("Spectrum") were not, as Tripathi asserts, arms' length transactions reflecting SMT's financial health, but rather artificial sales created collusively to make SMT appear healthy and well-managed, when it was actually in serious financial difficulty. (ECF Nos. 10 at 5, 8–11, 11 at ¶¶ 5–6, 12 at ¶¶ 5, 8–19). Tripathi asserts that as of September 2023 SMT had become "substantially more successful than it had been previously," and bases this assertion on, *inter alia*, SMT's increased sales and revenue. (ECF 11 at ¶ 5). Petitioner responds: (1) that the increased sales and revenues to which Tripathi refers can only be the sales to SSSI and Spectrum, which the English Petitioners aver are the only source of revenue preventing SMT from entering formal insolvency proceedings; and (2) that SMT's relationship with Spectrum and/or SSSI was not a genuine commercial relationship. (ECF 11 at ¶ 6).

Petitioner identifies twenty-three specific transfers of funds from SSSI to SMT, or its wholly-owned US subsidiary, Signifier Medical Technologies LLC, made via the Banks (the "Transfers"). (ECF Nos. 10 at 5, 12 at ¶ 21). Each of Petitioner's proposed subpoenas contains an identical request for documents relating to the Transfers, with some of the Transfers appearing in more than one subpoena. (ECF Nos. 11-6, 11-7, 11-8). Specifically, Petitioner

3

seeks: "All documents and communications relating to [SMT], including but not limited to any and all account information, information relating to any financial transactions, wire transfers, and/or CHIPs or SWIFT payment messages regarding any wire transfer, in relation to the following payments." (ECF Nos. 11-6, 11-7, 11-8). The subpoenas then list the relevant transactions for each Bank—seven for JPMorgan, six for Morgan Stanley, sixteen for Citizen. (ECF Nos. 11-6, 11-7, 11-8). Petitioner asserts that the discovery is important to his claims in the English Proceeding because the Banks' records relating to the Transfers may provide evidence that undermines Tripathi's defenses and assist in identifying persons who colluded with Tripathi. (ECF Nos. 10 at 5, 12 at 22).

### B. Procedural History

Petitioner now requests this Court's assistance in obtaining discovery from the Banks by way of the instant Application. Petitioner commenced this proceeding on December 20, 2024. (ECF 1). On February 26, 2025, with the Court's permission (ECF Nos. 7, 8), Petitioner amended his petition (ECF Nos. 10, 11). In support of his Application, Petitioner submits: a memorandum of law (ECF 10); a declaration from counsel (ECF 11); a declaration from Petitioner (ECF 12); and numerous exhibits, including the proposed subpoenas to the Banks (ECF Nos. 11-6, 11-7, 11-8).

## III. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other

thing for use in a proceeding in a foreign or international tribunal."[2] 28 U.S.C. § 1782. Section 1782 imposes three statutory requirements: (1) that the person from whom discovery is sought either reside or "be found" in the district of the district court to which the petitioner has made their application; (2) that the discovery is "for use" in a proceeding before a foreign tribunal; and (3) that the application is made by a foreign or international tribunal or "any interested person." *In re Edelman*, 295 F.3d 171, 175–76 (2d Cir. 2002) (citing *In re Esses*, 101 F.3d 873, 875 (2d Cir. 1996)). If a district court has jurisdiction over the petition, it may, in its discretion, grant discovery under Section 1782. *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (citing *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)). District courts routinely grant *ex parte* applications pursuant to Section 1782. *Gushlak v. Gushlak*, 482 F. App'x 215, 217 (2d Cir. 2012) (collecting cases) (finding it "neither uncommon nor improper" for a district court to grant *ex parte* applications).

Under the framework articulated in *Intel Corp. v. Advanced Micro Devices, Inc.*, a district court should consider four factors when deciding whether to exercise its discretion to grant Section 1782 discovery: (1) whether the target of discovery is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the proceedings' character, and the tribunal's receptiveness to U.S. federal court assistance; (3) whether the application attempts to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome. 542 U.S. 241, 264–65 (2004).

---

[2] A motion seeking discovery under Section 1782 is non-dispositive under Fed. R. Civ. P. 72(b) and is not on the list of motions exempt from a magistrate judge's jurisdiction. *See* 28 U.S.C. § 636(b)(1)(A); *In re Hulley Enterprises, Ltd.*, 358 F. Supp. 3d 331, 340–41 (S.D.N.Y. 2019). The motion is therefore within the scope of this Court's authority to decide.

### B. Analysis

Petitioner satisfies the three statutory requirements under Section 1782. Petitioner has shown that the Banks are "found" in this District within the meaning of Section 1782 because they all have offices and conduct extensive business in this District. (ECF Nos. 11 at ¶¶ 13–15, 11-11, 11-12). *See In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (holding that "found" "extends to the limits of personal jurisdiction consistent with due process"). Petitioner meets the "for use" requirement because he avers that he intends to use discovery obtained from the Banks to support his claims in the English Proceeding—an indisputably foreign proceeding before a foreign court. (ECF Nos. 10 at 5, 8–11, 11 at ¶¶ 5–6, 12 at ¶ 22). *See Mees*, 793 F.3d at 301. Finally, Petitioner is a party to the foreign proceeding, and thus is an "interested person" under Section 1782. *Intel*, 542 U.S. at 256.

On the current record, all four discretionary *Intel* factors also favor granting Petitioner's Application.

First, the Banks are not named parties in the English Proceeding. *Id.* at 264–65.

Second, there is no "authoritative proof" that the English High Court would not be receptive to Section 1782 relief. *In re Ernesto Andrade Grp.*, 712 F. Supp. 3d 438, 441 (S.D.N.Y. 2024) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) ("[The district court] should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782")). Rather, "there is ample evidence that courts in the United Kingdom" are receptive to this Court's assistance with discovery under Section 1782. *In re Tel. Media Grp. Ltd.*, 23-MC-215 (JGLC), 2023 WL 5770115, at *8 (S.D.N.Y. 2023). (*See also* ECF Nos. 10 at 17, 11 at ¶ 8).

Third, there is similarly no evidence that the English Court prohibits Petitioner from obtaining the information sought. *Mees*, 793 F.3d at 303 n.20; *In re Tiberius Grp. AG*, 19-MC-4667 (VSB), 2020 WL 1140784, at *4 (S.D.N.Y. 2020) ("Only where the materials being sought are privileged or otherwise prohibited from being discovered or used is the third *Intel* factor implicated."). The English Court adopts a permissive approach to obtaining evidence from other jurisdictions for use in litigation before it, including evidence obtained pursuant to Section 1782. *See South Carolina Ins. Co. v. Assurantie Maatschappij "De Zeven Provincien" N.V.*, [1987] A.C. 24, at 42 ("[A]ny party preparing his case in the High Court . . . is entitled to . . . try to obtain in a foreign country, by means lawful in that country, documentary evidence which they believe that they need in order to prepare and present their case.") (discussed in *Intel*, 542 U.S. at 262, n.13). There is also no evidence that Petitioner seeks this discovery to circumvent proof-gathering restrictions imposed by English law, or that his application is otherwise in bad faith. *See In re Christen Sveaas*, 249 F.R.D. 96, 106 (S.D.N.Y. 2008) (citing *Euromepa S.A.*, 51 F.3d at 1101); (ECF Nos. 10 at 17, 11 at ¶¶ 8–12).

Finally, the Court has reviewed the subpoenas and document requests at ECF Nos. 11-6, 11-7, and 11-8 and finds that they are not unduly intrusive or burdensome. *See Intel*, 542 U.S. at 265. A subpoena is unduly burdensome if the burden to the subpoenaed party outweighs the value of the information to the serving party, when considering: the relevance of the information sought; the party's need for the documents; the breadth of the documents; the time-period the request covers; the particularity with which the documents are described; and the burden imposed. *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017). Petitioner's subpoenas are narrowly tailored to obtain documents

regarding SMT "in relation to" twenty-three specific Transfers, and seek documents and information that the Banks would be expected to maintain in the ordinary course of business. (*See* ECF Nos. 11-6, 11-7, 11-8).  *See, e.g.*, *In re Ulmans*, 23-MC-23 (GHW) (VF), 2023 WL 3853703, at *6 (S.D.N.Y. 2023) (finding that a request for documents maintained in the ordinary course of business was not unduly burdensome under Section 1782).  The Banks may challenge specific requests by filing a motion to quash pursuant to Fed. R. Civ. P 45(d)(3).

### IV. CONCLUSION

For the foregoing reasons, Petitioner's Application for discovery pursuant to 28 U.S.C. § 1782 is **GRANTED**.  Petitioner is authorized to serve his proposed subpoenas by **Thursday, May 1, 2025**, if Petitioner has not already done so.  If any Respondent seeks to file a motion to quash or a motion for a protective order, they must do so by **Thursday, May 14, 2025**.

The Clerk of the Court is respectfully directed to close ECF Nos. 1 and 9.

**SO ORDERED.**

Dated: April 18, 2025
New York, New York

*/s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge